# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MIDLAND NATIONAL LIFE INSURANCE COMPANY,**
      Plaintiff,

v.                                                  Case No. 13-C-1081

**EUGENE E. INGERSOLL, et al.,**
      Defendants.

---

## DECISION AND ORDER

In 2002, Midland National Life Insurance Company issued an annuity to Dolores Behm, who died on December 30, 2012. At the time of her death, the annuity included a death benefit of approximately $360,000. The sole beneficiary named in the annuity is the Dolores Behm Family Trust. The named beneficiaries of the trust are Eugene Ingersoll and his wife, Kathleen Ingersoll. In January 2013, the trust, through the trustee, who at that time was Eugene Ingersoll, attempted to claim the death benefit from Midland. Ingersoll, however, had previously been the Midland insurance agent associated with Behm's annuity. Midland determined that because Behm had been Ingersoll's customer, Midland could not distribute the death benefit to him. Midland further determined that it could not distribute the death benefit to the trust so long as Ingersoll and his wife were the trust's beneficiaries.

Before Behm had named the Ingersolls as beneficiaries of the trust, the beneficiary was Wilbur Gardner, who was Behm's romantic partner. The contingent beneficiaries were Gardner's children, Bruce Gardner and JoAnn Gredler. Behm amended the trust to name the Ingersolls as sole beneficiaries in December 2010. According to Bruce Gardner and

JoAnn Gredler, Behm was diagnosed with dementia earlier that year. They allege that Behm's amending the trust was the product of undue influence by Eugene Ingersoll and also that Behm lacked the mental capacity to execute the amendment. Wilbur Gardner died on December 2, 2011. Thus, if Behm's amendment to the trust were declared void, Bruce Gardner and JoAnn Gredler, as the original contingent beneficiaries, would be entitled to receive the trust proceeds and the annuity's death benefit.

Following the trust's claim for the death benefit, Midland initiated this action for interpleader under the diversity jurisdiction, 28 U.S.C. § 1332, and Federal Rule of Civil Procedure 22. Midland sought to deposit the funds with the court and to be dismissed from this action, leaving the Ingersolls, Gardner, and Gredler to litigate the issue of who is entitled to receive the funds.[1] I granted Midland's request to deposit the funds with the court. However, Gardner and Gredler objected to Midland's being dismissed from the case. Gardner and Gredler claimed that because Eugene Ingersoll was Midland's agent, Midland should be required to participate in discovery. I did not dismiss Midland from the case, and Midland did participate in discovery, including by providing responses to written discovery and producing witnesses for depositions.

Recently, the Ingersolls, Gardner, and Gredler mediated and settled their dispute over who is entitled to the funds on deposit with the court. Midland did not participate in

---

[1] In addition to naming as defendants the Ingersolls, Gardner, and Gredler, Midland caused an estate to be opened in Wisconsin probate court and named the administrator of the estate as a defendant. Midland also named the current trustee of the Behm Family Trust, Sean Sweetman, as a defendant. (Sweetman is apparently the Ingersolls' neighbor.) The estate filed an answer but otherwise has not participated in this case. The clerk of court has entered Sweetman's default. Thus, only the Ingersolls, on the one hand, and Gardner and Gredler, on the other, have claimed interests in the funds.

that mediation, and it has now moved to be dismissed from this case and for certain related relief.³ No party has objected to Midland's request to be dismissed from the case. However, in addition to seeking a dismissal, Midland seeks to be awarded from the funds on deposit with the court the $51,335.63 in attorneys' fees and costs that it has incurred in this action. The Ingersolls, Gardner, and Gredler oppose Midland's request for fees and costs.

The parties generally agree that a district court has discretion to award reasonable attorneys' fees and costs to a disinterested stakeholder who initiates a successful interpleader action. This rule is based on traditional equity practice. See 4 James Wm. Moore, Moore's Federal Practice—Civil § 22.06 (3d ed. 2014); 7 Charles Alan Wright et al. Federal Practice & Procedure § 1719 (3d ed. 2001). Three reasons are usually cited in support of the rule: (1) the stakeholder, who has obtained the stake innocently, should not be required to spend his own funds as part of a dispute that he had no part in making; (2) the stakeholder has aided the claimants by initiating a proceeding that will preserve the stake and resolve the dispute over it efficiently and without multiplicitous litigation; and (3) the stakeholder's attorneys' fees are likely to be minor, and thus awarding such fees from the stake will not significantly deplete the fund. See, e.g., Chase Manhattan Bank v. Mandalay Shores Coop. Hous. Ass'n, Inc., 21 F.3d 380, 383 (11th Cir. 1994); Moore's, supra; Wright et al., supra.

---

³Specifically, Midland seeks a declaration that it has no further liability with respect to the annuity and a permanent injunction against any defendant's filing an additional lawsuit against Midland in connection with the annuity. Midland also seeks a default judgment against Sweetman that would extinguish any claim the Behm Family Trust might have against Midland. No party has objected to any of this relief, and therefore it will be granted.

In recent years, several courts have held that a disinterested stakeholder should not obtain a fee award if filing the interpleader action could be viewed as part of the stakeholder's normal or ordinary course of business. See, e.g., Minn. Mut. Life Ins. Co. v. Gustafson, 415 F. Supp. 615, 618–19 (N.D. Ill. 1976); Moore's, supra; Wright et al., supra. These courts also hold that interpleader actions are generally part of the ordinary course of the insurance business. Chase Manhattan, 21 F.3d at 383; Gustafson, 415 F. Supp. at 618–19; Moore's, supra; Wright et al., supra. This exception to the rule of awarding attorneys' fees to a disinterested stakeholder appears to stem from Judge Friendly's opinion in Travelers Indemnity Co. v. Israel, 354 F.2d 488 (2d Cir. 1965). In that case, the court held that a district court did not abuse its discretion in refusing to award fees to several insurance companies who initiated an interpleader action. In the course of the opinion, Judge Friendly wrote that "[w]e are not impressed with the notion that whenever a minor problem arises in the payment of insurance policies, insurers may, as a matter of course, transfer a part of their ordinary cost of doing business [to] their insureds by bringing an action for interpleader." Id. at 490.

In Minnesota Mutual Life Insurance Co. v. Gustafson, the district court offered an expanded rationale for the ordinary-course-of-business exception:

> We agree with Judge Friendly in Travelers Indemnity Company, supra, that attorneys' fees should not be granted to the stakeholder as a matter of course in interpleader actions concerning the proceeds of insurance policies. Although it is true that an interpleader action benefits both claimants and the courts by promoting expeditious resolution of the controversy in one forum, the chief beneficiary of an interpleader action is the insurance company. An inevitable and normal risk of the insurance business is the possibility of conflicting claims to the proceeds of a policy. An interpleader action relieves the company of this risk by eliminating the potential harassment and expense of a multiplicity of claims and suits. Furthermore, it discharges the company from all liability in regard to the fund. It thus seems unreasonable to award

4

an insurance company fees for bringing an action which is primarily in its own self-interest.

We conclude, therefore, that, when an insurance company brings an interpleader action concerning disputed claims of a kind that usually arise in the course of its business, fees should not be granted to its counsel . . . . The insurance company, not the beneficiaries of the policy, should pay the costs of relieving it of its liability to the proper claimants. The claimants will have to pay the costs of their own representation and should not, in addition, bear those of the insurer.

Gustafson, F. Supp. at 618–19 (footnote omitted). In Chase Manhattan Bank v. Mandalay Shores, the Eleventh Circuit offered a slightly different rationale for the exception:

The principle behind the normal-course-of-business standard is simple: an insurance company, for example, avails itself of interpleader to resolve disputed claims to insurance proceeds—disputes that arise with some modicum of regularity. In a sense, the insurance company will use interpleader as a tool to allocate proceeds and avoid further liability. As the costs of these occasional interpleader actions are foreseeable, the insurance company easily may allocate the costs of these suits to its customers. Unlike innocent stakeholders who unwittingly come into possession of a disputed asset, an insurance company can plan for interpleader as a regular cost of business and, therefore, is undeserving of a fee award.

Chase Manhattan, 21 F.3d at 383.

The leading treatises on federal practice note that the ordinary-course-of-business exception is not universally accepted. See Moore's, supra; Wright, supra. The Wright treatise goes a step further and states that to the extent the exception is based on the notion that an insurance company benefits from the interpleader, it is ill-founded, since "all stakeholders benefit by being able to use interpleader and that alone does not negate the equitable considerations supporting an award of attorney fees." Wright, supra, at p. 681–82. The treatise also states that "the cost-of-business rationale fails to recognize that other equitable concerns should be consulted in determining whether fees or costs are warranted." Id. at 682.

5

The Seventh Circuit has not squarely addressed whether district courts should apply the ordinary-course-of-business exception. In <u>Aaron v. Mahl</u>, the court affirmed a district court's decision to award fees to an interpleader plaintiff over the claimant's objection that the fees were part of the plaintiff's ordinary course of business. 550 F.3d 659, 667 (7th Cir. 2008). However, in that case, the Seventh Circuit did not have to decide whether the ordinary-course-of-business exception was sound. Rather, the parties had agreed that "a court may award attorneys' fees and costs to a prevailing stakeholder in an interpleader action if the costs are determined to be reasonable and the stakeholder's efforts are not part of its normal course of business." <u>Id.</u>

In the present case, the claimants argue that I should apply the ordinary-course-of-business exception, and Midland argues that I should not. I must therefore decide whether the exception is well-founded. I conclude that it is. I see no reason to award fees to an insurance company that files an interpleader action for the purpose of resolving a dispute over the proper distribution of policy benefits. As the courts noted in <u>Gustafson</u> and <u>Chase Manhattan</u>, an insurance company must expect that such disputes will arise from time to time and must accept the risk that it will sometimes be subject to multiple and conflicting claims to policy benefits. Becoming embroiled in such disputes is thus an ordinary and expected part of the insurance business, and it is not inequitable to require the insurer to bear the attorneys' fees it incurs in the course of exiting such disputes. It is true that when there is a bona fide dispute over the funds, the insurance company could be viewed as doing the claimants a service by filing an interpleader action that will preserve the stake and prevent multiple suits. However, the insurance company also benefits from the interpleader because it will be relieved of the risk of distributing the policy benefits to the

wrong claimant and the risk of becoming the target of multiple suits. Since all parties to the action benefit, all should bear their own fees, as is the norm in American litigation. See, e.g., Florin v. Nationsbank of Ga., N.A., 34 F.3d 560, 562 (7th Cir. 1994). While the Wright treatise points out that all interpleader plaintiffs, not just insurance companies, benefit from being relieved of multiple liability, it does not follow that insurance companies should be treated the same as other interpleader plaintiffs. Insurance companies are different because, as noted, they are not really "innocent" stakeholders—they entered the insurance business with knowledge that from time to time they will become involved in disputes among claimants over who is entitled to policy benefits. The fees they incur in filing these occasional interpleader actions are thus foreseeable expenses that can be, and likely have been, worked into the policy premiums. Thus, unlike a true innocent stakeholder—who through no fault of his own comes into possession of the disputed funds and has no means of being reimbursed for the cost of initiating the interpleader action—an insurance company should not be awarded fees from the stake when the stake consists of policy benefits. Accordingly, I will deny Midland's motion to deduct its costs and fees from the fund on deposit with the court.

There is a separate problem with Midland's request for fees in this case, which is that Midland's fee request is not limited to the fees it incurred in preparing and filing this interpleader action and obtaining an order of dismissal. See, e.g., Trs. of Dirs. Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 426–27 (9th Cir. 2000) (noting that, in interpleader action, attorneys' fees awards to plaintiff are typically modest and limited to fees incurred in, for example, "preparing the complaint, obtaining service of process on the claimants to the fund, and preparing an order discharging the plaintiff from

liability and dismissing it from the action"). Rather, Midland also seeks to be reimbursed for the attorneys' fees it incurred in responding to discovery propounded by Gardner and Gredler concerning Eugene Ingersoll's status as an agent of Midland, and for the attorneys' fees it incurred in responding to inquiries from the Wisconsin Office of the Commissioner of Insurance regarding Ingersoll's role in this matter. Even if Midland were entitled to recover the typically modest fee normally awarded to a disinterested stakeholder, Midland would not be entitled to recover the fees it incurred in performing these other tasks. In responding to Gardner and Gredler's discovery requests, Midland was acting as a witness to the underlying dispute rather than as a disinterested stakeholder. Even if Midland had not been a party to this action, Gardner and Gredler could have served a subpoena on Midland and required it to provide the discovery, and Midland would have been required to bear its own attorneys' fees in responding to the subpoena. Thus, the fact that Midland is also a disinterested stakeholder is not grounds for shifting the costs of responding to the discovery onto the claimants. Similarly, in responding to the inquiries from the Office of the Commissioner of Insurance, Midland was not acting in its capacity as a disinterested stakeholder. Rather, Midland was dealing with its regulator and providing information about one of its agents. Again, this is a cost that Midland would have had to absorb whether or not it filed this interpleader action and thus is not a cost that should be deducted from the stake. Accordingly, even if Midland were entitled to recover the attorneys' fees it incurred in filing the interpleader and obtaining an order of dismissal, I could not grant its request for more than $50,000 in fees.

In sum, Midland's motion for attorneys' fees will be denied. However, because Midland has deposited the stake into the court's registry and the parties do not oppose

Midland's request to be dismissed from this case and for related relief, those requests will be granted. The remaining matter is to distribute the funds on deposit with the court to the claimants in accordance with their settlement agreement. However, the claimants have not filed anything with the court memorializing their settlement or indicating how the fund should be distributed. The claimants should file this information within thirty days of the date of this order.

## CONCLUSION

For the reasons stated, **IT IS ORDERED** that Midland's petition for attorneys' fees and costs is **DENIED**.

**IT IS FURTHER ORDERED** that Midland's motion for final judgment order in interpleader and default judgment against Sean Sweetman is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 54(b), I determine that there is no just reason for delay and will enter judgment on Midland's claim for interpleader.

**FINALLY, IT IS ORDERED** that the claimants shall file their settlement paperwork within thirty days of the date of this order.

Dated at Milwaukee, Wisconsin, this 18th day of December 2014.

s/ Lynn Adelman

LYNN ADELMAN
District Judge